## UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

### CENTRAL DIVISION

| | |
|---|---|
| PHILLIP C. RUNNING, | 3:13-CV-03007-RAL |
| Plaintiff, | |
| | OPINION AND ORDER DENYING |
| vs. | PLAINTIFF'S 28 U.S.C. § 2255 MOTION |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Phillip Running, a federal inmate serving a 120-month sentence for producing child pornography, United States v. Running, 10-CR-30067-RAL, Doc. 39,[1] has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, Running v. United States, 13-CV-3007-RAL, Doc. 1.[2] The Government opposes Running's motion, arguing that he is not entitled to relief on any of his claims. CIV Doc. 18. In an Opinion and Order issued last year, this Court denied in part Running's motion, but concluded that a factual issue existed on part of Running's motion. CIV Doc. 20. This Court appointed counsel for Running and ordered the parties to supplement the record. CIV Doc. 20 at 21; Doc. 21. This Court held two subsequent hearings to determine, among other things, whether an evidentiary hearing was needed. CIV Docs. 24, 31. The parties now have supplemented the record through written submissions in a manner to make it unnecessary for this Court to conduct an evidentiary hearing because even when resolving all

---

[1]Citations to Running's criminal case hereafter will be "CR Doc." followed by the document number from the Case Management/Electronic Case Filing (CM/ECF) system.

[2]Citations to pleadings from the present case, 13-CV-3007-RAL, in which this Opinion and Order is being entered will be "CIV Doc." followed by the CM/ECF document number.

credibility issues for Running no relief is warranted here. See United States v. Sellner, 773 F.3d 927, 929–30 (8th Cir. 2014) (stating that an evidentiary hearing is unnecessary when "the petitioner's allegations, accepted as true, would not entitle the petitioner to relief" (citation and alterations omitted)); Sinisterra v. United States, 600 F.3d 900, 906 (8th Cir. 2010) (explaining that no evidentiary hearing is necessary if "the motion and the files and records of the case conclusively show that [the prisoner] is entitled to no relief." (quoting 28 U.S.C. § 2255(b))). This Court repeats its rulings from the prior Opinion and Order and addresses why none of Plaintiff's remaining arguments justify § 2255 relief, thereby setting forth in this opinion and order its full decision.

## I.  Background

Running first appeared in federal court in early 2009, when he was charged with aggravated sexual abuse of a child. United States v. Running, 09-CR-30026-RAL, Doc. 1.[3] While that case was pending, the Government learned of an unrelated allegation that Running, back in 2001 or 2002 when he was approximately fourteen years old, had made a videotape of his younger siblings with their genitals exposed. CIV Doc. 16 at 2; CR Doc. 49 at 49–50; 2009 CR Doc. 84 at 1. As part of a plea deal, the Government offered to forgo charging Running for making the videotape if he agreed to plead guilty in the sexual abuse case. CIV Doc. 16 at 2; CR Doc. 49 at 49–50. Running rejected the offer, proceeded to trial, and was found not guilty of sexual abuse. CIV Doc. 16 at 2. Thereafter, on August 17, 2010, a grand jury charged Running with two counts of producing child pornography in connection with the videotape. CR Doc. 1. The indictment alleged that Running committed the offenses between on or about June 1, 2001 and May 21, 2002. CR Doc. 1.

---

[3]Citations to Running's 2009 criminal case hereafter will be "2009 CR Doc." followed by the CM/ECF document number.

Running's trial was short, lasting only one day. CR Doc. 46. The evidence established that from July 1996 until March 2002, Running and his younger siblings lived in South Dakota with their foster parents Susan and Dell Neumeister. CR Doc. 46 at 49–50. The Neumeisters discovered the videotape in question in May 2002, when their daughter placed what she thought was a children's movie in the VCR. CR Doc. 46 at 40–51. The videotape showed Running's nine-year-old sister H.N. and six-year-old brother B.N. with their genitals exposed. CR Doc. 46 at 67–68. A voice could be heard on the videotape telling the children to pose in sexually suggestive ways. CR Doc. 46 at 68. Susan Neumeister testified at trial that she recognized the voice on the videotape as Running's. CR Doc. 46 at 54. The jury also heard from Tim Huyck, a counselor who had worked with Running. CR Doc. 46 at 63. Huyck testified that Running had acknowledged making the videotape of his siblings. CR Doc. 46 at 64. The Government rested after presenting testimony from three witnesses and playing the videotape. CR Doc. 46 at 65. Running moved unsuccessfully for a judgment of acquittal and did not offer any witnesses or evidence. CR Doc. 46 at 66–69. The jury convicted Running of both counts, CR Doc. 28, and this Court sentenced Running to two concurrent terms of 120 months' imprisonment, CR Doc. 39. The ten-year mandatory minimum that applied to Running's conviction made this the lowest sentence possible. 18 U.S.C. § 2251 (2000).

Running appealed his conviction to the United States Court of Appeals for the Eighth Circuit. United States v. Running, 431 F. App'x 520 (8th Cir. 2011) (per curiam) (unpublished). His counsel filed a brief under Anders v. California, 386 U.S. 738 (1967), arguing that this Court lacked jurisdiction because Running was a juvenile at the time of the offenses but was not

prosecuted until he was an adult.[4] Running, 431 F. App'x at 520. The Eighth Circuit reviewed the record under Penson v. Ohio, 488 U.S. 75 (1988), concluded that there were "no nonfrivolous issues for appeal," and affirmed Running's conviction. Running, 431 F. App'x at 521. Running petitioned the Supreme Court of the United States for a writ of certiorari, which was denied on April 2, 2012. Running v. United States, 132 S. Ct. 1859 (2012) (mem.).

On February 12, 2013, Running filed his § 2255 petition asserting the following grounds for relief: (1) his speedy trial rights were violated; (2) his counsel was ineffective; (3) the Government used a coerced confession to convict him; and (4) his sentence violated the Eighth Amendment. To allow the Government to respond to Running's petition, this Court ordered that Running choose between waiving his attorney-client privilege or having his ineffective-assistance claim stricken. CIV Doc. 12. Running chose to waive the attorney-client privilege, CIV Doc. 13, after which the Government filed an affidavit from Running's prior counsel Jana Miner, who is the Senior Litigator for the Federal Public Defender's Office for North and South Dakota and who was Running's attorney in both his 2009 and 2010 cases, CIV Doc. 16.

It is not entirely clear whether Running meant for Grounds One, Three, and Four of his petition to be free-standing claims or merely a continuation of his ineffective-assistance-of-counsel claim in Ground Two. For instance, although Ground Three is captioned "Conviction Obtained by use of Coerced Confession," Running argues within this ground that Miner failed to adequately investigate his case. CIV Doc. 1 at 6. Giving Running the benefit of the doubt, this

---

[4]There is a certain unfairness to Running here in that, if the making of the videotape had been prosecuted earlier, Running almost certainly would have been prosecuted, if at all, as a juvenile and would not have faced the mandatory minimum ten year sentence. This seeming unfairness, however, is not the issue before this Court on this § 2255 case, and this Court lacks the authority to alter the law to make the mandatory minimum go away for those prosecuted as adults for such an offense whose conduct occurred as a juvenile.

4

Court will analyze Grounds One, Three, and Four as both independent claims for relief and as claims that Miner provided ineffective assistance of counsel.

## II.   Analysis

### A.   Grounds One, Three, and Four as Independent Claims for Relief

The Government argues that Grounds One, Three, and Four of Running's petition must be dismissed because they are procedurally defaulted. Claims not raised on direct appeal are procedurally defaulted and may not be asserted in a habeas petition unless the petitioner can demonstrate "cause and actual prejudice" or "that he is actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal quotation marks and citations omitted); United States v. Collier, 585 F.3d 1093, 1097 (8th Cir. 2009). When Running appealed to the Eighth Circuit, he failed to raise any of the claims he now raises in Grounds One, Three, and Four of his petition. Because Running does not claim actual innocence, he must demonstrate both cause for failing to raise these claims on direct appeal and actual prejudice therefrom. Charboneau v. United States, 702 F.3d 1132, 1136 (8th Cir. 2013).

Running has failed to make this showing. Although ineffective assistance of appellate counsel may excuse a procedural default, Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005), Running does not argue that Miner provided ineffective assistance by failing to raise Grounds One, Three, and Four on direct appeal. Rather, he contends that these claims were not previously presented because he "was not aware" of Miner's "trial strategy" and because he is not "educated in criminal law defenses." CIV Doc. 1 at 8. But ignorance of the law does not excuse a procedural default. Hall v. United States, 41 F. App'x 743, 744 (6th Cir. 2002); Rodriguez v. Maynard, 948 F.2d 684, 688 (10th Cir. 1991); Smittie v. Lockhart, 843 F.2d 295, 298 (8th Cir. 1988). Running has not explained how being better aware of Miner's trial strategy

would have enabled him to avoid a procedural default. Running certainly was fully aware of Miner's trial strategy by the time he filed his direct appeal. Because Running has not demonstrated cause for failing to raise the claims in Grounds One, Three, and Four on direct appeal, these grounds are dismissed to the extent that they are independent claims for relief.

## B.  Ineffective Assistance of Counsel

Running's ineffective-assistance-of-counsel claims are governed by the test articulated in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). An ineffective-assistance claim has two elements: Running must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficiency. Strickland, 466 U.S. at 687.

To demonstrate deficient performance, Running must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. This standard is "highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Running has the burden of demonstrating that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To establish prejudice, Running must demonstrate a "reasonable probability" that, but for his attorney's deficient performance, the outcome of his trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. When, as here, a petitioner makes multiple claims of ineffective assistance of counsel, each claim must be independently examined to determine if there is prejudice, rather than taking the matters collectively. See Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002).

6

That is, the Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief." United States v. Brown, 528 F.3d 1030, 1034 (8th Cir. 2008).

## 1. Ground One

Running alleges that his right to a speedy trial was violated because although the Walworth County Police Department and the South Dakota Department of Social Services "accused" him of making the videotape in 2002, he was not indicted until 2010. CIV Doc. 1 at 4. The Sixth Amendment's Speedy-Trial Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Contrary to Running's suggestion, a person is not "accused" within the meaning of the Sixth Amendment simply because authorities become aware of that person's criminal activity. Rather, it takes "either a formal indictment or information or . . . the actual restraints imposed by arrest and holding to answer a criminal charge" before the Sixth Amendment right to a speedy trial attaches. United States v. Marion, 404 U.S. 307, 320 (1971).

Here, Running's Sixth Amendment right to a speedy trial did not attach until August 17, 2010, when the Government indicted him for producing child pornography. Thus, any delay before the indictment did not violate Running's Sixth Amendment rights. Neither Running's allegations that the State of South Dakota placed him in a secure group home for making the videotape nor his being in custody for the sexual abuse charge on August 17, 2010, alter this conclusion. See United v. MacDonald, 456 U.S. 1, 10 n.11 (1982) ("Of course, an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign."); United States v. Garner, 32 F.3d 1305, 1309 (8th Cir. 1994) ("[I]t is settled law that an arrest on one charge does not trigger the right to a speedy trial on another charge filed after the arrest.") (alteration in original) (quoting

7

United States v. Beede, 974 F.2d 948, 950 (8th Cir. 1992)).  Because Running's speedy trial argument lacks merit, Miner was not deficient for failing to raise it.

## 2.    Ground Two

Running contends that Miner provided ineffective assistance of counsel by failing to establish a defense or contest the indictment in opening and closing arguments. CIV Doc. 1 at 5. The record does not support this claim.  Miner used her opening statement to point out weaknesses in the Government's case and to explain why the evidence would fall short of establishing all of the elements in the indictment. CR Doc. 46 at 33–35. She stressed that the videotape did not show Running touching his siblings or forcing them to engage in sexual conduct and that there was no evidence that Running had ever viewed the tape for sexual purposes. CR Doc. 46 at 34.

Miner attacked certain elements of the indictment more directly in closing argument.  To convict Running of producing child pornography, the Government had to prove that the videotape depicted minors engaged in sexually explicit conduct.  18 U.S.C. § 2251(a); CR Doc. 30 at 7–9.  As relevant here, the jury instructions defined "sexually explicit conduct," as:

> the lascivious exhibition of the genitals or pubic area of any person.  A depiction of a child is a "lascivious exhibition of the genitals" when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer.

CR Doc. 30 at 9.  Miner argued that Running did not treat the videotape as though it depicted this sort of sexually explicit conduct.  After all, Miner noted, the videotape was found in the Neumeisters' movie collection rather than in Running's room, there was no evidence that Running had viewed the videotape to arouse himself, and Running never destroyed or hid the videotape despite moving out of the Neumeister home. CR Doc. 46 at 100–03.  Miner also

8

focused on Running's age at the time the videotape was made, urging the jury to consider whether a fourteen year old could have the intent to produce child pornography. CR Doc. 46 at 101–02. Given the evidence that Running produced the videotape, Miner had few other options for defending Running. She identified the options that were available and pursued them zealously during her opening statement and closing argument. Her performance during these phases of the trial was well within the purview of effective assistance.

Running argues further in Ground Two that Miner was ineffective because she did not offer any evidence or witnesses at trial. CIV Doc. 1 at 5. Miner explained in her affidavit that there were very few witnesses for her to call and that she advised Running not to testify because doing so would allow the jury to match his voice to the voice on the videotape. CIV Doc. 16 at 3. Running has not identified what evidence Miner neglected to offer, whom Miner should have called as witnesses, and how any such witnesses would have testified. Thus, Running's claim that Miner failed to offer evidence or witnesses is too vague to establish that Miner's performance was deficient or prejudicial. Saunders v. United States, 236 F.3d 950, 952–53 (8th Cir. 2001) (rejecting petitioner's ineffective assistance claim where petitioner alleged that counsel failed to call witnesses but did not identify the witnesses or explain how they would have testified).

Running's final argument in Ground Two suffers from a similar lack of specificity. Running asserts that Miner's cross-examination of witnesses was ineffective because she neither attacked the Government's case nor explored whether certain witnesses were biased. CIV Doc. 1 at 5. However, Running provides no elaboration or explanation of what questions Miner should have asked and which witnesses were allegedly biased. Running in short failed to provide information to analyze whether Miner's performance on cross-examination was deficient or

9

prejudicial. Saunders, 236 F.3d at 952–53. In reality, the trial transcript shows that Miner cross-examined the Government's witnesses in an objectively reasonable manner with an eye towards building Running's defense. CR Doc. 46 at 43–65.

### 3.    Ground Three

Ground Three of Running's petition focuses on Huyck's testimony that Running admitted to making the videotape. Running alleges that after discovery of the videotape, he was placed in a "secure group home" where his release depended upon taking accountability for his actions and making a confession. CIV Doc. 1 at 6. He alleges that these conditions "coerced" him into confessing in violation of the Fifth Amendment and that Miner failed to investigate this aspect of his case. CIV Doc. 1 at 6. There were two factual issues on this issue that prompted this Court to appoint Running an attorney and to allow both parties to supplement the record with additional facts.

The first factual issue related to whether Miner's performance was deficient under Strickland regarding her investigation and work to address Huyck's testimony that Running admitted to making the videotape and whether a ground existed for a suppression motion. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. The reasonableness of an attorney's investigation "depends critically" on the information furnished by the defendant. Id.; see also Koons v. United States, 639 F.3d 348, 352–54 (7th Cir. 2011) (rejecting petitioner's claims that counsel was ineffective for failing to investigate and failing to file a motion to suppress because petitioner never informed counsel of the facts giving rise to the alleged Fourth Amendment violation); Cox v. Wyrick, 642 F.2d 222, 226 (8th Cir. 1981) (declining to find ineffective assistance of counsel where there was "no evidence that the defendant gave counsel

10

information which would have led him reasonably to conclude that further investigation was necessary"). Miner was aware of Huyck's impending testimony that Running acknowledged making the videotape and discussed the matter with Running. Miner and Running disagree on what Running did and did not say during that discussion. CIV Doc. 33 at ¶ 19. Miner concluded that she did not have a "sufficient legal basis to file a motion to suppress" Running's confession. CIV Doc. 16 at 3. This Court need not resolve what was and was not said between Running and Miner concerning the Huyck testimony because, for the reasons explained within this opinion and order, Miner's conclusion of the lack of a basis to suppress the statement to Huyck was accurate. An attorney's failure to pursue a frivolous issue is neither objectively unreasonable nor prejudicial. Harrington v. United States, 689 F.3d 124, 130 (2d Cir. 2012); United States v. Carter, 355 F.3d 920, 924 (6th Cir. 2004).

The second factual issue prompting this Court to request further evidence concerned what relationship existed between the State of South Dakota and the employees of the group home at the time Huyck spoke with Running. Running must show that his claim that the group-home employees coerced his confession has merit. The merit of this claim hinges at least in part on whether the State played a role in the group-home employees' coercion of Running. See Colorado v. Connelly, 479 U.S. 157, 170 (1986) ("The sole concern of the Fifth Amendment . . . is governmental coercion."); see also id. at 166 ("The most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause."). Specifically, there must be a "link between coercive activity of the State, on the one hand, and [the] resulting confession by [Running], on the other." Id. at 165.

Cases considering whether the Fifth Amendment applies to individuals other than law enforcement officers illustrate why such information is important. See United States v. Sanchez,

11

614 F.3d 876, 886 (8th Cir. 2010); United States v. D.F. (D.F. I), 63 F.3d 671, 683–84 (7th Cir. 1995), vacated on other grounds, 517 U.S. 1231 (1996); United States v. D.F. (D.F. II), 115 F.3d 413, 420 (7th Cir. 1997). In D.F. II, for example, the Seventh Circuit considered whether the questioning of a minor by employees at a government mental health center was subject to the constraints of the Fifth Amendment. 115 F.3d at 419–21. For the Fifth Amendment to apply, the Seventh Circuit explained, an interrogation "must be at the hands of a government actor whose questioning is of a nature that reasonably contemplates criminal prosecution." Id. at 420. That is, "the state actor's questioning of the defendant must have as one of its purposes, definitive or contingent, the use of the statement in a criminal prosecution." D.F. I, 63 F.3d at 684 (footnote omitted). Because the mental health center employees had a close relationship with law enforcement officials and viewed the prosecution of the defendant as part of their job, the Seventh Circuit held that the Fifth Amendment applied to the employees' interrogation of the defendant. D.F. II, 115 F.3d at 420. In contrast, the Eighth Circuit in Sanchez concluded that the Fifth Amendment was inapplicable to a mother's questioning of her minor son during an interview with police. 614 F.3d at 886. The Eighth Circuit explained that the Fifth Amendment only applies to the actions of a private individual like the mother when "the government exercised such coercive power or such significant encouragement that it is responsible for [the private individual's] conduct, or . . . the exercised powers are the exclusive prerogative of the government." Id. (first alteration in original) (quoting United States v. Garlock, 19 F.3d 441, 442 (8th Cir. 1994)).

Huyck testified that Running's admission occurred when Running was at Our Home, Inc. (Our Home) and Huyck was his counselor. CR Doc. 46 at 63–64. Our Home is a privately owned nonprofit corporation that is not funded, owned, or operated by the State of South Dakota.

12

CIV Doc. 32 at ¶¶ 5, 6, 10. Our Home began in 1972 and operates as a residential treatment center. CIV Doc. 32 at ¶¶ 2, 5. Our Home has counselors, like Huyck during his time working there, who are mandatory reporters of child abuse under SDCL § 26-8A-3. Doc. 32 at ¶ 16. However, as a counselor at a private residential treatment center, Huyck was not "a government actor whose questioning is of a nature that reasonably contemplates criminal prosecution." DF II, 115 F.3d at 420.

Running certainly felt as if he was compelled to be at Our Home at the time. CIV Doc. 33. Running was placed at Our Home and transported there by the South Dakota Department of Social Services (DSS). CIV Doc. 33 at ¶¶ 6, 7. Running understood that he was required to stay at Our Home, and the facility was secured with his freedom restricted. CIV Doc. 33 at ¶¶ 7, 8, 13, 14. When he fled Our Home, Running ended up being transferred to a secured juvenile detention center. CIV Doc. 33 at ¶ 12. However, none of this changes the fact that DSS did not place Running at Our Home to undergo an investigation or interrogation to develop evidence to use in any criminal prosecution. Indeed, the State of South Dakota never prosecuted Running on the basis of the admission to Huyck.

The outcome of Running's trial in all probability would have been the same without Huyck's testimony that Running confessed to making the videotape. Even without Huyck's testimony, the Government still had Susan Neumeister's testimony that it was Running's voice on the videotape telling the children what to do. CR Doc. 46 at 54. Moreover, the thrust of Miner's defense at trial was that the videotape did not depict minors engaged in sexually explicit conduct; there was very little argument—and no evidence whatsoever—that someone other than Running made the videotape. CR Doc. 46 at 66–67, 98–103.

### 4. Ground Four

13

Running argues in Ground Four of his petition that the unique circumstances surrounding his conviction render his sentence violative of the Eighth Amendment's prohibition of cruel and unusual punishment. CIV Doc. 1 at 7. Running contends that because he was a juvenile when he made the videotape, he is less culpable than an adult and therefore less deserving of punishment.[5] CIV Doc. 1 at 7.

A sentence is considered cruel and unusual under the Eighth Amendment when it is disproportionate to the crime of conviction. Graham v. Florida, 560 U.S. 48, 59 (2010). The Supreme Court's proportionality cases fall into two classifications. Id. "The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case." Id. The second classification involves categorical restrictions on certain sentences based on an imbalance between the severity of a punishment and the culpability of a class of offenders. Id. at 60–61.

Historically, the categorical approach was only applied in death penalty cases. So, for instance, the Supreme Court adopted categorical rules prohibiting the death penalty for non-homicide crimes, Kennedy v. Louisiana, 554 U.S. 407, 421 (2008), and for offenders with low intellectual functioning, Atkins v. Virginia, 536 U.S. 304, 321 (2002). Likewise, the Supreme Court categorically prohibited the death penalty for juvenile offenders after concluding that juveniles are less culpable than adults and therefore less deserving of the most severe punishment. Roper v. Simmons, 543 U.S. 551, 568–75 (2005).

In Graham, the Supreme Court applied the categorical approach for the first time to a non-capital case when it banned life-without-parole sentences for juveniles convicted of non-homicide offenses. 560 U.S. at 62–75. Reasoning that a sentence of life without parole for a

---

[5]As set forth in the prior footnote, this Court is not unsympathetic to Running's argument. But this Court was impelled to sentence Running to the mandatory minimum ten year sentence.

juvenile offender is akin to the death penalty, the Supreme Court found that such a severe sentence was cruel and unusual when imposed on juveniles, a class of offenders with diminished culpability and greater capacity for reform. Id. at 67–72.

Most recently, the Supreme Court in Miller v. Alabama, 132 S. Ct. 2455 (2012) banned mandatory life-without-parole sentences for juveniles convicted of homicide crimes. In reaching this conclusion, the Court stressed that Graham's "unprecedented" ban on a sentence of life without parole for juveniles was justified "[i]n part because we viewed this ultimate penalty for juveniles as akin to the death penalty." Miller, 132 S. Ct. at 2466. Relying on this kinship, as well as juvenile offenders' diminished culpability and precedent precluding mandatory death sentences for adults, the Supreme Court held that the Eighth Amendment's "principle of proportionality" categorically prohibited mandatory life without parole sentences for juveniles. Id. at 2475.

Although the conclusion in Graham and Miller that juveniles are less culpable than adults may have some general application to Running's Eighth Amendment argument, the categorical approach employed in those cases does not. Because Running's mandatory ten-year sentence is far less severe than a sentence of life without parole, it does not raise the same unacceptably high risk of disproportionate punishment that drove the Supreme Court's decisions in Graham and Miller. Put another way, one of the Supreme Court's primary justifications for adopting categorical rules in Graham and Miller—that a sentence of life without parole for a juvenile is so severe that it is akin to the death penalty—is lacking in this case. Accordingly, neither Graham nor Miller establish that a ten-year mandatory prison term for a defendant who committed his crime as a juvenile is the sort of sentencing practice that requires categorical rules to ensure constitutional proportionality. Nor does Running's sentence violate the categorical rule

announced in Miller simply because the statute on which he was convicted mandated a minimum sentence of ten years in prison. The problem with the mandatory sentencing schemes at issue in Miller was that they precluded the judge or jury from considering the mitigating circumstances of youth before imposing the uniquely severe punishment of life without parole on a juvenile offender. Miller, 132 S. Ct. at 2466 ("By removing youth from the balance . . . these [mandatory sentencing] laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender."). As the Supreme Court explained, Miller's holding "mandates only that a sentencer follow a certain process— considering an offender's youth and attendant characteristics—before imposing a particular penalty." Id. at 2471. When, as here, the mandated term of imprisonment is not akin to a sentence of life without parole for a juvenile, Miller does not apply. United States v. Marshall, 736 F.3d 492, 506 (6th Cir. 2013) (Lawson, J., concurring in the judgment) (concluding that because Miller only held that a sentencing authority must consider a juvenile's characteristics when imposing the most severe punishment, it cannot "be read to prohibit mandatory term-of-years sentences for juveniles across the board"), cert. denied, 134 S. Ct. 2832 (2014).

Because the categorical approach used in Graham and Miller is inapplicable here, Running must demonstrate that the ten-year sentence violates the Eighth Amendment given the particular circumstances of his case. In the context of a case-particular challenge to a term-of-years sentence, the Supreme Court has explained that the Eighth Amendment "contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" Graham, 560 U.S. at 59–60 (quoting Harmelin v. Michigan, 501 U.S. 957, 997, 1000–

16

1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)) (internal quotation marks omitted).

Determining whether a particular sentence for a term of years violates the Eighth Amendment involves a two-step analysis. Id. at 60. First, courts must compare the gravity of the crime to the severity of the penalty to determine whether an "inference of gross disproportionality" exists. Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring in part and concurring in the judgment)). Only in the "rare case" that such an inference arises do courts proceed to the second step—comparing the defendant's sentence to sentences received by other defendants convicted of the same crime. Id. (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring in part and concurring in the judgment)). "If this comparative analysis 'validates[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." Id. (alterations in original) (quoting Harmelin, 501 U.S. at 1005 (Kennedy, J. concurring in part and concurring in the judgment)).

To evaluate the gravity of a crime, courts consider the defendant's culpability and the harm or threat of harm to the victim or society. Henderson v. Norris, 258 F.3d 706, 709 (8th Cir. 2001). Here, there was some concern that Running posed a threat to the public. As this Court noted at sentencing, there was evidence that Running had engaged in other sexual misconduct with his younger brother and Running had been convicted when he was sixteen of engaging in sexual contact with a thirteen-year-old girl. CR Doc. 49 at 42. While Running was on probation for that offense, he was caught possessing a picture of himself engaged in sexual activity with a different minor. CR Doc. 49 at 42.[6] Running's crimes of conviction in this case were certainly

_____

[6]Running was found not guilty of the 2009 aggravated sexual abuse of a child charge, but the alleged victim in that case testified that Running had sexually abused her in April 2008. 2009 CR Doc. 119 at 2. At sentencing, this Court was mindful to sentence Running for child

17

serious. See United States v. Reingold, 731 F.3d 204, 216 (2d Cir. 2013) ("[C]hild pornography crimes at their core demand the sexual exploitation and abuse of children."); United States v. MacEwan, 445 F.3d 237, 249 (3d Cir. 2006) ("The congressional findings underlying § 2251 repeatedly stress that child pornography is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.") (citation and internal quotation marks omitted). However, Running's crimes were not as grave as a typical case involving the production of child pornography. Running committed his crimes when he was approximately fourteen years old, the videotape was never distributed or available on the internet, and the victim impact statements from Susan Neumeister and Running's younger sister suggest that Running's offenses did not cause significant harm to his siblings.

With respect to the severity of Running's penalty, the version of 18 U.S.C. § 2251 in effect at the time Running committed his offenses imposed a mandatory minimum sentence of ten years with a statutory maximum of twenty years.   18 U.S.C. § 2251 (2000). Running's sentencing guideline range for each offense was 210 to 240 months' imprisonment. Taking into account Running's age when he made the videotape and the absence of certain aggravating factors present in many cases involving the production of child pornography, this Court granted Running's motion for a downward variance and sentenced him to two concurrent terms of 120 months' imprisonment. CR Doc. 49 at 43. Although ten years is still a very harsh penalty, Supreme Court precedent and deference to Congress compel the conclusion that Running's sentence was not grossly disproportionate to his crimes.

---

pornography and not for the aggravated sexual abuse of a child case, but observed with reference to the aggravated sexual abuse of a child charge, "that was a case where the jury could have gone either way."  CR Doc. 49 at 42.

18

When Congress enacted the mandatory minimum sentence in the version 18 U.S.C. § 2251 applicable to Running, it made a penological judgment that the production of child pornography was a serious enough offense to require ten years of imprisonment for even the least culpable offender.[7]   Courts reviewing the proportionality of a sentence must "grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983); see also Harmelin, 501 U.S. at 998 ("[T]he fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" (Kennedy, J. concurring in part and concurring in the judgment) (quoting Rummel v. Estelle, 445 U.S. 263, 275–76 (1980))).  Indeed, the "primacy of the legislature" is one of the concepts that inform the Supreme Court's narrow view of the Eighth Amendment's proportionality principle. Harmelin, 501 U.S. at 1001 (Kennedy, J. concurring in part and concurring in the judgment).

In addition to stressing deference to Congress, the Supreme Court has cautioned that "'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare.'" Hutto v. Davis, 454 U.S. 370, 374 (1982) (per curiam) (quoting Rummel, 445 U.S. at 272). The Supreme Court's precedent in this area illustrates just how difficult it is to succeed on such a challenge, even when sentences appear to be shockingly harsh in relation to the crimes. See Ewing v. California, 538 U.S. 11, 30–31 (2003) (plurality opinion) (rejecting a proportionality challenge to a sentence of twenty-five years to life under three-strikes law for a defendant who stole $1,200 in golf clubs); Harmelin, 501 U.S. at 995–96 (affirming mandatory

---

[7]In 2003, Congress increased that mandatory minimum sentence for violations of 18 U.S.C. § 2251 to fifteen years.  Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108–21, 117 Stat. 650.

19

sentence of life without parole for first-time offender convicted of possessing 672 grams of cocaine); Hutto, 454 U.S. at 374 (finding no constitutional error where defendant was sentenced to two consecutive terms of twenty years in prison for possession with intent to distribute nine ounces of marijuana and distribution of marijuana); Rummel, 445 U.S. at 285 (affirming mandatory sentence of life imprisonment under three-strikes law where triggering conviction was for obtaining $120.75 by false pretenses and two prior felonies were nonviolent frauds that each involved less than $100).

Given the serious nature of Running's crimes, the substantial deference owed to Congress's creation of the ten-year mandatory minimum, and Supreme Court precedent dictating that courts should uphold a defendant's sentence even where it seems harsh in light of the offense committed, a comparison of Running's crimes to his sentence does not give rise to an inference of gross disproportionality. This conclusion holds true despite Running's young age and all the attributes that accompany it. When viewed in the larger context of juvenile sentencing, Running's ten-year sentence does not create an inference of disproportionality. Courts have upheld harsher sentences for juveniles convicted of serious crimes. See Roldan v. Barnes, No. ED CV 13-394-JLS(E), 2015 WL 103467, at *19–20 (C.D. Cal. Jan. 7, 2015) (finding that sentence of thirty-five years to life for fifteen-year-old defendant was not contrary to clearly established federal law where defendant was convicted of committing two gang-related armed robberies); People v. Perez, 154 Cal. Rptr. 3d 114, 120–21 (Cal. Ct. App.) (finding no Eighth Amendment violation where sixteen-year-old defendant was sentenced to thirty years to life for sexually assaulting two children under the age of fourteen years old), cert. denied, 134 S. Ct. 527 (2013); People v. Payne, 850 N.W.2d 601, 605–06 (Mich. Ct. App. 2014) (per curiam)

20

(rejecting Eighth Amendment challenge to mandatory twenty-five-year sentence for a seventeen-year-old defendant convicted of sexual assault of a child under thirteen).

Moreover, the Eighth Circuit has "never held a sentence within the statutory range to violate the Eighth Amendment." United States v. Vanhorn, 740 F.3d 1166, 1170 (8th Cir. 2014). And courts have routinely rejected Eighth Amendment challenges to very severe sentences for producing child pornography. Id. at 1169–70 (sentence of 220 months' imprisonment for producing child pornography was not grossly disproportionate); United States v. McDade, 399 F. App'x 520, 524–25 (11th Cir. 2010) (per curiam) (holding that 240-month sentence for producing child pornography did not meet the threshold of gross disproportionality); United States v. Davis, 306 F. App'x 102, 104 (5th Cir. 2009) (per curiam) (rejecting Eighth Amendment challenge to 200-month sentence for producing child pornography).

In sum, although the ten-year mandatory minimum sentence for crimes Running committed when he was fourteen may seem unfair, it is not unconstitutional. This Court took Running's youth into account as much as it could, but was statutorily bound to impose a sentence of at least ten years. Because Running's Eighth Amendment claim lacks merit, Miner was not deficient for failing to raise it.

## III.   Conclusion

This Court understands how Running is upset that a video recording that he did when he was a minor results in Running getting a ten year mandatory minimum sentence. However, on the issues raised in his § 2255 motion, there is an absence of a substantial showing of the denial of a constitutional right to justify issuing a certificate of applicability under 28 U.S.C. § 2253. For the reasons stated above, it is hereby

21

ORDERED that Running's motion to vacate, set aside, or correct sentence, Doc. 1, is denied in full. It is further

ORDERED that no certificate of appealability is issued, although Running may request a circuit judge to issue a certificate under Rule 22 of the Federal Rules of Appellate Procedure.

DATED this 31st day of May, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

22